ORIGINAL

1   Michael D. Braun (167416)
        service@braunlawgroup.com
2   **BRAUN LAW GROUP, P.C.**
    12304 Santa Monica Blvd., Suite 109
3   Los Angeles, CA 90025
    Phone:  (310) 442-7755
4   Fax:     (310) 442-7756

5   Matthew J. Zevin (170736)
        mzevin@smi-law.com
6   STANLEY, MANDEL & IOLA, L.L.P.
    550 West C Street, Suite 1600
7   San Diego, CA 92101
    Phone: (619) 235-5306
8   Fax:     (815) 377-8419

9   Samuel S. Deskin (216974)
        ssd@deskinlawfirm.com
10  DESKIN LAW FIRM
    1020 South Sherbourne Dr., Suite 204
11  Los Angeles, CA 90035
    Phone: (310) 720-3634
12  Fax:     (310) 360-9882

13  Attorneys for Plaintiff
    EUGENE REEDE STOCKTON
14

FILED

09 FEB -9 PM 3: 51

E-filing

CRB

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                  C 09        0587

18  EUGENE REEDE STOCKTON, on      )   CASE NO.
19  behalf of himself and all others  )
    similarly situated,             )   CLASS ACTION
20                                  )
                   Plaintiffs,      )
21                                  )   **COMPLAINT FOR DAMAGES,**
    vs.                             )   **EQUITABLE, DECLARATORY, AND**
22                                  )   **INJUNCTIVE RELIEF**
    CHASE BANK USA, N.A.,           )
23                                  )   Jury Trial Demanded
                   Defendant.       )
24                                  )
                                    )
25  _____)
26
27
28

Complaint for Damages

Plaintiff, by and through his attorneys, hereby complains against Chase Manhattan Bank USA, N.A. ( hereinafter referred to as "Defendant" or "Chase"), on behalf of himself and the proposed class of similarly-situated persons, upon information and belief, except as to his own actions, the investigation of counsel, and the facts that are a matter of public record, as follows:

## INTRODUCTION

1.      This is a class action on behalf of Plaintiff and all Chase credit card customers who reside in California and who, between February 5, 2005 and the present ("Class Period"), received and accepted a balance transfer offer from Chase for a fixed annual percentage rate ("APR") for the life of the loan, and who now are required to pay a $10 monthly charge on that loan ("Class").

## PARTIES

2.      Plaintiff Eugene Reede Stockton is a resident of Marin County, California, and was a Chase customer who received and accepted a balance transfer offer from Chase for a low fixed APR during the Class Period.

3.      Defendant Chase is incorporated and headquartered in Delaware.  The company is a significant participant in the financial services and credit card industry both in the United States and abroad.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which the Plaintiff is a citizen of California, and Defendant is a citizen of Delaware.

5.      This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting business activities within the

1   State of California by marketing, soliciting, offering and extending credit cards to
2   California consumers, as well as other systematic and continuous business contacts
3   within the State.

4       6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because
5   Plaintiff resides in the District, and because a substantial part of the events giving rise to
6   Plaintiff's claims occurred in the District.

7
8                   **SUBSTANTIVE ALLEGATIONS**

9       7.    The contractual terms of credit between Chase and its credit card customers
10  are set forth in a card member agreement ("CMA") that Chase provides to its customers
11  upon an offer and acceptance of credit.  Chase periodically offers its customers special
12  offers of credit known as balance transfer offers ("BTO") whereby existing balances
13  with other creditors may be transferred to the customer's account with Chase.  Some of
14  the BTO terms are separately stated in solicitation materials for the BTO, while other
15  terms are incorporated by reference from the CMA.  Accordingly, the contractual terms
16  relating to the BTO are governed by both the BTO and the CMA.

17      8.    During the Class Period, Chase routinely made BTOs to its credit card
18  customers, often enticing them with offers of low APRs for the life of the loan.  Indeed,
19  Chase routinely offered BTOs at 2.99%, 3.99% and 4.99% for the life of the loans.
20  These rates were well below the normal purchase rates and generally below current
21  market rates for unsecured and open-ended consumer credit, making such offers very
22  attractive to consumers.

23      9.    In or around November 2005, Mr. Stockton received a BTO from Chase to
24  transfer a balance of up to $24,500 at 3.99% for the life of the loan.  Mr. Stockton
25  accepted the offer and transferred approximately $22,000 to his Chase account.
26  According to the terms of the BTO, Mr. Stockton was required to make minimum
27  monthly payments equivalent to 2% of the balance of his loan.  While the CMA specifies
28  certain additional fees or charges, such as a "Late Fee," "Overlimit Fee," "Return

Complaint for Damages                    3

1   Payment Fee," "Return Check Fee," and "Administrative Fees," neither the BTO nor the
2   CMA identified or authorized Chase to impose or charge an Account Service Charge.
3   Since receiving the loan in 2005, Mr. Stockton has made payments in accord with the
4   terms disclosed in the BTO and CMA.

5       10.     In or around November 2008, Chase purportedly sent Mr. Stockton a
6   change in terms notice ("CIT") which stated the following:

7           a.      We're sending you this notice to advise you of some new changes to
8   your credit card account. These changes will take place automatically and will be
9   effective with your January 2009 statement.

10          b.      A new account service charge ("ASC") of $10.00 per month will be
11  applied to your account. The charge will be owed whether or not you use your account.

12          c.      The monthly service charge is non-refundable unless you close your
13  account at which time you must pay your outstanding balance in full.

14          d.      Your minimum payment due will increase from 2% to 5% of the
15  ending balance on your monthly statement. As a result your required monthly minimum
16  will increase.

17      11.     As of December, Mr. Stockton's closing balance was approximately
18  $10,000. His minimum payment was approximately $200. In January his minimum
19  payment more than doubled to approximately $500 and he was assessed a $10 monthly
20  ASC.

21      12.     Chase stated in its change of terms notice that one of the main reasons for
22  implementing the changes was due to the current level of the APR loans.

23      13.     The BTOs sent to Plaintiff and the Class offered low APRs for the life of
24  the loan. Charging a $10 fee effectively modifies the APR agreed upon by parties which
25  was to remain static for the life of the loan. Unilaterally changing the terms of the loan
26  and effectively increasing the agreed upon APR is an unfair business practice and in
27  breach of contract.

28

Complaint for Damages                         4

## CLASS ACTION ALLEGATIONS

14.   Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and members of a proposed class of all Chase credit customers who reside in California and who, between February 5, 2005 and the present, received and accepted a balance transfer offer from Chase for a fixed annual percentage rate for the life of the loan, and who now are required to pay a $10 monthly ASC on that loan.

15.   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons throughout California are members of the Class. The precise number of Class members and their addresses are ascertainable from the books and records of Chase. Moreover, should it become necessary, Class members may be notified of the pendency of this action by published and/or mailed notice.

16.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of law that is complained of herein.

17.   Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and consumer litigation. Plaintiff has no interests that are adverse or antagonistic to those of the Class.

18.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

      a.   whether Defendant's actions, as described herein, are in breach of contract;

1             b.     whether Defendant's actions, as described herein, violate Business &

2  Professions Code § 17200, et seq.;

3             c.     whether Plaintiffs and the Class are entitled to recover actual damages

4  and the proper measure of such damages;

5             d.     whether Plaintiffs and the Class are entitled to declaratory relief; and

6             e.     the nature and extent of any other remedies to which proposed Class

7  members are entitled as a result of Defendant's wrongful conduct.

8     19.   A class action is superior to all other available methods for the fair and

9  efficient adjudication of this controversy, since joinder of all members is impracticable.

10  Furthermore, as the damages suffered by individual Class members may be relatively

11  small, the expense and burden of individual litigation make it impossible for members of

12  the Class to individually redress the wrongs done to them.  There will be no difficulty in

13  the management of this action as a class action.  Individual litigation presents the

14  potential for inconsistent or contradictory judgments.  A class action presents far fewer

15  management difficulties and provides the benefits of single adjudication, economy of

16  scale, and comprehensive supervision by a single court.

17     20.   By uniformly imposing unconscionable terms in its card member

18  agreements, Chase has acted on grounds that apply generally to the class such that final

19  injunctive relief and declaratory relief is appropriate as to the whole class.

## FIRST CAUSE OF ACTION

### (Unfair Business Practices in Violation of
### Business & Professions Code §§ 17200, *et seq.*)

25     21.   Plaintiff incorporates by reference and realleges all paragraphs previously

26  alleged herein.  These claims are brought on behalf of Plaintiff and the Class against the

27  Defendant.

28

22.    California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

23.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

24.    Chase has and continues to violate the "unfair" prong of the UCL by suddenly imposing and continuing to charge its credit customers a $10 monthly ASC on a loan that was offered and accepted at a fixed APR for the life of the loan with no additional service charges. Chase's conduct is unfair in many ways including but not limited to the following:

      a.    The addition of a monthly "service" charge effectively modifies, by increasing, the APR agreed to by the parties. This is a unilateral change imposed on Class members by Chase long after the terms of the BTO were offered and accepted;

      b.    Notwithstanding Chase's characterization of the charge, the ASC is not really a "service" charge because it is owed whether or not the consumer uses his Chase account.

      c.    Plaintiff and the Class cannot opt out of the $10 ASC because it is charged whether or not the account is being used, and the only way to avoid the monthly service charge is by immediately paying off the account in full;

      d.    The practical impact of Chase's practice is that it has unilaterally increased the cost of credit on a loan in which the cost (as a percentage) had been previously agreed upon and fixed. Short of immediately paying off the loan, Chase's customers are held hostage to terms and conditions which were not part of the bargain and to which they never acceded. Indeed the low, fixed APR was designed to entice consumers into transferring existing loans with other creditors to Chase. To modify the terms of the credit after the money has been transferred is harmful and unfair within the meaning of the UCL.

1    e.    Chase's justification is simply that it no longer liked the bargain it
2  struck with its customers.  The gravity of the harm to members of the Class resulting
3  from such unfair acts and practices outweighs this and any other conceivable reasons,
4  justifications and/or motives of Chase for unilaterally changing the terms of credit and
5  imposing a $10 monthly charge on BTOs.  In addition, California has express and
6  otherwise well developed legislative policies against fraudulent and unfair conduct.

7    25.    By committing the acts and practices alleged above, Chase has engaged, and
8  continues to be engaged, in unfair business practices within the meaning of California
9  Business and Professions Code §§ 17200, et seq.

10    26.    Through its unfair acts and practices, Chase has obtained, and continues to
11  unfairly obtain, money from Plaintiff and the Class in the form of its $10 monthly service
12  charge, as well as interest charged thereon.  As such, Plaintiff requests that this Court
13  cause Chase to restore this money to Plaintiff and all Class members, and to enjoin
14  Chase from continuing to violate the Unfair Competition Law as discussed herein.
15  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete
16  remedy if such an order is not granted.

17
18                      **SECOND CAUSE OF ACTION**
19              **(Unfair Business Practices in Violation of**
                 **Business & Professions Code §§ 17200, et seq.)**
20

21    27.    Plaintiff incorporates by reference and realleges all paragraphs previously
22  alleged herein.  These claims are brought on behalf of Plaintiff and the Class against
23  Chase.

24    28.    A business act or practice is "fraudulent" under the Unfair Competition Law
25  if it actually deceives or is likely to deceive members of the public.

26    29.    Chase's acts and practices as described herein have deceived and/or are
27  likely to deceive members of the consuming public.  Specifically, offering credit at a
28  specific APR for the life of the loan and then unilaterally changing it under the guise of a

1  service fee is nothing more than a bait and switch, the very kind of practice that the UCL
2  was designed to stop. The terms of the original BTOs made to Plaintiff and the Class
3  clearly indicated that the APR was fixed for the life of the loan. These representations
4  were false, misleading and/or likely to deceive because Chase secretly intended to
5  impose and charge the additional, yet previously undisclosed monthly ASC.

6      30.   As a result of the conduct described above, Chase has been, and will
7  continue to be, unjustly enriched at the expense of Plaintiff and members of the Class.
8  Specifically, Chase has been unjustly enriched by the monthly $10 ASC it now charges
9  on BTOs, which charge was unilaterally imposed in contravention to the agreements it
10  made with its customers.

11      31.   Through its unfair acts and practices, Chase has improperly obtained, and
12  continues to improperly obtain money from members of the Class. As such, Plaintiff
13  requests that this Court cause Chase to restore this money to Plaintiff and all Class
14  members, and to enjoin Chase from continuing to violate the Unfair Competition Law as
15  discussed herein. Otherwise, Plaintiff and the Class will be irreparably harmed and/or
16  denied an effective and complete remedy if such an order is not granted.

17

18  ## THIRD CAUSE OF ACTION

19  ### (Breach of Contract)

20

21      32.   Plaintiff incorporates by reference and realleges all paragraphs previously
22  alleged herein. These claims are brought on behalf of Plaintiff and the Class against the
23  Defendant.

24      33.   Plaintiff and each member of the class entered into written credit
25  agreements with Chase. The agreements were unilaterally drafted and presented to
26  Plaintiff and the Class by Chase. In each of these agreements, Chase promised to
27  provide Plaintiff and the Class with consumer credit at a fixed annual percentage rate for
28  the life of the loan.

34.   Plaintiff and the Class have duly performed all their obligations existing under the terms of their contracts with Chase.

35.   By unilaterally imposing a $10 monthly ASC, Chase has changed the cost of the loan and modified the agreed upon APR. By doing so it has changed a fundamental term of the agreement in breach of contract.

36.   Defendant's breach of contract caused damage to Plaintiff and Class in the amount of the $10 monthly fee, plus interest.

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

37.   Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. This claim is brought on behalf of Plaintiff and the Class against the Defendant.

38.   Like every contract, the contracts entered into between Plaintiff and Chase contain an implied covenant of good faith and fair dealing, which is designed to effectuate the intentions and reasonable expectations of the parties reflected by the mutual promises within the contract.

39.   Plaintiff and the Class agreed to borrow money from Chase on specific terms disclosed in their respective CMAs and BTOs. From the perspective of Plaintiff and the Class, the overall cost of credit, .i.e., the annual percentage rate, plus any related fees and charges, was the primary term upon which Plaintiff and the Class agreed to contract and borrow money from Chase.

40.   Plaintiff and the Class performed all that was required of them under the terms of the contract.

41.   By unilaterally imposing an additional $10 monthly ASC, Chase violated the implied covenant of good faith and fair dealing in that it acted contrary to the reasonable expectations of Plaintiff and the Class and unreasonably interfered with their

1   ability to receive the benefit of the bargains upon which they agreed.

2       42.     Defendant's breach of contract caused damage to Plaintiff and Class in the

3   amount of the $10 monthly fee, plus interest.

5                           **FIFTH CAUSE OF ACTION**

6           **(Declaratory Relief Pursuant to Code of Civil Procedure §1060)**

8       43.     Plaintiff incorporates by reference and realleges paragraphs 1-20 previously

9   alleged herein  This claim is brought on behalf of Plaintiff and the Class against

10  Defendant.

11      44.     Plaintiff, on behalf of himself and the Class, seeks a declaration of rights

12  and duties pursuant to Code of Civil Procedure § 1060.  Specifically, Plaintiff and the

13  Class seek a judicial declaration that certain terms of the CMA are both procedurally and

14  substantively unconscionable and, therefore, unenforceable under California law.

15      45.     The CMA is a standard form document that was drafted by Chase, which

16  has superior bargaining power over Plaintiff and the Class.  The CMA was offered to

17  Plaintiff and the Class on a take-it-or leave it basis.  Accordingly, it is procedurally

18  unconscionable.

19      46.     The CMA contains numerous provisions that are so unfairly one-sided that

20  they are substantively unconscionable under California law.  For example, the CMA

21  contains a purported Arbitration Agreement that includes numerous one-sided and

22  unconscionable terms, including the following:

23          a.      You will not be able to bring a class action or other representative

24  action in court such as that in the form of a private attorney general action, nor will you

25  be able to bring any claim in arbitration as a class action or other representative action.

26  You will not be able to be part of any class action or other representative action brought

27  by anyone else, or be represented in a class action or other representative action.  In the

28  absence of this arbitration agreement, you and we may otherwise have had a right or

Complaint for Damages                           11

1   opportunity to bring claims in a court, before a judge or jury and/or to participate or be

2   represented in a case filed in court by others (including class actions and other

3   representative actions). Other rights that you would have if you went to a court, such as

4   discovery or the right to appeal the decision may be more limited, except as otherwise

5   provided below, those rights are waived.

6         b.       . . . If a party elects to arbitrate a Claim, the arbitration will be

7   conducted as an individual action. Neither you nor we agree to any arbitration on a class

8   or representative basis, and the arbitrator shall have no authority to proceed on such

9   basis. This means that even if a class action lawsuit or other representative action, such

10  as that in the form of a private attorney general action, is filed, any Claim between us

11  related to the issues raised in such lawsuits will be subject to an individual arbitration

12  claim if either you or we so elect. No arbitration will be consolidated with any other

13  arbitration proceeding without the consent of all parties. The only Claims that may be

14  joined in an individual action under this Arbitration Agreement are (1) those brought by

15  us against you . . . or (2) those brought by you and any co-applicant, joint card member,

16  or authorized user of your Account, or your heirs or your trustee in bankruptcy against

17  us.

18        c.       Parties Covered. For the purposes of this Arbitration Agreement, . . .

19  "we", "us", and "our" shall include any third party providing benefits, services, or

20  products in connection with the Account (including but not limited to credit bureaus,

21  merchants that accept any credit device issued under the Account, rewards programs and

22  enrollment services, credit insurance companies, debt collectors, and all of their officers,

23  directors, employees, agents and representatives) if, and only if, such a third party is

24  named by you as a co-defendant in any Claim you assert against us.

25        47.    The CMA also contains a unilateral change in terms provision that is so

26  one-sided as to render it unconscionable under California law. Specifically, it provides,

27  in part:

28

Changes to this agreement: We can change this agreement at any time, regardless of whether you have access to your account by adding, deleting or modifying any provision. . . . Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions. . . . [T]he notice [of any Change] may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that yo do not want to accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to notify us in writing by the date stated in the notice . . . .

48.     Additionally, the CMA contains a choice-of-law provision that provides that it shall be governed and interpreted in accordance with federal law and, 'to the extent state law applies, the law of Delaware, without regard to conflict-of-law principals" will apply "no matter where you live or use the account." To the extent that this provision chooses Delaware over California state law, it violates California choice of law rules and policy, including, but not limited to, the policy in favor of allowing consumers to address disputes using the class action mechanism. It is, therefore, unconscionable and unenforceable as to California consumers.

## **PRAYER FOR RELIEF**

**Wherefore,** Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

1.     A permanent injunction enjoining Defendant from charging an ASC;

2.     Restitution, including reimbursement to Plaintiff and all Class Members of all monies paid as a result of the imposition of the ASC;

3.     An award of any additional equitable relief and/or damages incidental to the requested injunctive relief;

Complaint for Damages

13

1    4.   Declaratory relief as described herein;

2    5.   An award of reasonable attorneys' fees and costs;

3    6.   Statutory pre-judgment and post-judgment interest; and

4    7.   All other relief that this Court may deem just and proper.

5

6                     **DEMAND FOR JURY TRIAL**

7

8    Plaintiff and the Class demand a jury trial in this action for all the claims so triable.

9

10   DATED:  February 6, 2009.

11                                    **BRAUN LAW GROUP, P.C.**

12

13                                    By

14                                       Michael D. Braun
                                         12304 Santa Monica Blvd., Suite 109
15                                       Los Angeles, CA 90025
                                         Phone:  (310) 442-7755
16                                       Fax:    (310) 442-7756

17                                       Matthew J. Zevin (170736)
                                         STANLEY, MANDEL & IOLA, L.L.P.
18                                       550 West C St., Suite 1600
                                         San Diego, CA 92101
19                                       Phone:  (619) 235-5306
                                         Fax:    (815) 377-8419
20

21                                       Samuel S. Deskin (216974)
                                         DESKIN LAW FIRM
22                                       1020 South Sherbourne Dr., Suite 204
                                         Los Angeles, CA 90035
23                                       Phone:  (310) 720-3634
                                         Fax:    (310) 360-9882
24

25                                    **ATTORNEYS  FOR  PLAINTIFFS**

26

27

28

Complaint for Damages                        14